UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT C. STRYKER,

          Petitioner,

v.                                                                             Case No. 23-cv-0139-bhl

DANIEL CROMWELL,

          Respondent.

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

        On February 2, 2023, Petitioner Robert C. Stryker filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] (ECF No. 1.) On June 9, 2023, Respondent Daniel Cromwell moved to dismiss Stryker's petition. (ECF No. 10.) For the following reasons, Respondent's motion is granted, and Stryker's petition will be dismissed.

## BACKGROUND

        In August of 2014, Stryker's neighbors reported to law enforcement that Stryker, then forty-one years old, had tried to kiss their sixteen-year-old daughter. (ECF No. 11-2 at 2.) After learning of this incident, Stryker's wife told him to take his belongings and leave their home. (*Id*.) Stryker removed some personal property but left a laptop computer that he used in the basement. (*Id*.) Two days later, a detective arrived at the home to speak with Stryker's wife. (*Id*.) Stryker's wife informed the detective that in 2010, Stryker admitted to her that he had an addiction to child pornography and that he had removed and then smashed hard drives from his computer after visiting a website monitored by the police. (*Id*.) Stryker's wife also informed the detective that in

---

[1] Stryker also filed a Motion to Enlarge the Record, (ECF No. 3), seeking to include a number of documents that he claims support Ground One in his petition. (*Id*. at 1.) "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In other words, "the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Id*. at 182. The documents that Stryker seeks to add were never presented to the Wisconsin state courts on appeal. Nevertheless, a number of the documents, including correspondence between Stryker and his appointed counsel, have assisted the Court in further understanding Stryker's claim on Ground One. The Court will therefore grant Stryker's motion to expand the record.

July 2014 during a family counseling session, Stryker admitted to viewing child pornography within the past two years. (*Id*. at 2-3.)

Stryker's wife retrieved a laptop, located in the children's play area of the basement, and turned it on at the detective's request--a password was not required. (*Id*. at 3.) The detective then presented and reviewed a form with Stryker's wife, which she signed, authorizing him to take the computer, "forensically download" its contents, and search them. (*Id*.) During the forensic examination of the laptop, law enforcement found sixty-four thumbcache images depicting potential child pornography, including five pornographic images of prepubescent girls. (*Id*. at 4.) Law enforcement also discovered a document, entitled "Inventory.doc," which contained descriptions of Stryker's "struggles with child pornography addiction." (*Id*.) Stryker's wife had provided police with a number of generic passwords used by the family and one of those passwords opened the document. (*Id.*) Stryker was charged with five counts of possession of child pornography based on the images found on the laptop. (*Id*. at 5.)

Stryker moved to suppress the results of the search on the grounds that his wife did not have the authority to permit police to search the laptop or the password-protected file, Inventory.doc. (*Id.*) The circuit court conducted an evidentiary hearing and concluded that Stryker's wife had authority to consent to the search of the laptop, that she did so voluntarily, and that the search was specific to the allegations of possession of child pornography being investigated by the police. (*Id*.) The circuit court found that law enforcement officers had used a family password provided by Stryker's wife to open the document and denied the motion. (*Id*. at 5-6.) Stryker filed a motion for reconsideration after a new judge took over the case. That motion was also denied, with the court explaining that Stryker's wife had "actual authority" to consent to the laptop's search and the search of its files. (*Id*. at 6-7.) Stryker then pleaded guilty to one count of possession of child pornography in violation of Wis Stat. § 948.12. (ECF No. 1 at 2.) On December 19, 2016, he received a sentence of eight years initial confinement and eight years extended supervision. (*Id*.) At the sentencing hearing, Stryker's trial counsel tried to explain the Inventory.doc file, stating that "Stryker's therapist asked [him] to prepare the document as part of his treatment process." (ECF No. 11-2 at 4-5.)

After his sentencing, Stryker sought post-conviction relief from the state court. To Stryker's frustration, these efforts took substantial time and ultimately included two separate motions for post-conviction relief. Stryker's first motion for post-conviction relief was prepared

and filed by appointed counsel.[2] While waiting on the motion, Stryker complained to counsel about the amount of time it was taking to secure transcripts and file the motion. (ECF No. 3-1 at 1-2.) He asked whether the process could be expedited or the court reporter sanctioned. (*Id.*) In a September 12, 2017 letter, counsel responded, explaining that the transcripts were delayed by health issues with the court reporter (who had emergency surgery) and stating she would not file a motion for sanctions. (ECF No. 3-1 at 3.) Counsel finally received the transcripts in December 2017 and confirmed this fact in letter the following July. In that letter, counsel informed Stryker that her work was being slowed by her own right hand injury and told him he had "an unrealistic view of how long [his] case would take." (*Id.* at 8-9.) Ultimately, counsel filed Stryker's (first) postconviction motion in July of 2019, thirty months after sentencing, raising three issues: (1) the admission into evidence of five images of child pornography and Inventory.doc document; (2) trial counsel's ineffectiveness in his cross-examination of the detective regarding alleged discrepancies in his testimony at the two hearings; and (3) trial counsel's ineffectiveness in not seeking exclusion of Inventory.doc as a privileged communication under Wis. Stat. § 905.04. (ECF No. 11-2 at 7.) The postconviction court held "a *Machner* hearing—the Wisconsin analogue to [a] federal ineffective assistance [of counsel] hearing," *Pidgeon v. Smith*, 785 F.3d 1165, 1171 (7th Cir. 2015), where Stryker's trial counsel testified and was cross-examined. After the hearing, on January 3, 2020, the court denied Stryker's motion. (ECF No. 11-2 at 7-8; ECF No. 1 at 4-5.)

Three days later, on January 6, 2020, Stryker asked the State Public Defender (SPD) for replacement counsel. (ECF No. 2-1 at 24-26.) The SPD responded on February 6, 2020, denying his request and informing him that his "cases appear to be proceeding appropriately," and that his appointed counsel had "put a great deal of work into [his] cases." (*Id.* at 27.) The SPD explained there was "no basis for appointing a new attorney, and appointing a new attorney would only cause further needless delay." (*Id.*) The SPD also informed Stryker that "[a]n indigent person's right to public defender representation for appeal does not encompass a right to an attorney of choice or to successive attorneys." (*Id.*) Stryker then asked the SPD to reconsider its decision and complained that his counsel had failed to utilize several legal arguments he had identified. (*Id.* at 28-32.) The SPD noted that Stryker couched his request in terms of unreasonable delay but also simply

---

[2] The State Public Defender appointed the same counsel to represent Stryker in this case (14-CF-1068) and another case (15-CF-983) where a jury convicted Stryker of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02. (ECF No. 2-1 at 5-6.)

disagreed with his "attorney's legal conclusions and strategic decisions." (*Id.* at 33.) The SPD advised that "[t]here is no right to appointment of a new attorney to render a second opinion of such matters." (*Id.*) Given his insistence, the SPD gave him the option of proceeding "with [appointed counsel] on the issues she identified and is litigating, or . . . discharg[ing] [appointed counsel] and proceed[ing] without a public defender attorney." (*Id.*) In May 2020, Stryker sent a letter to his appointed counsel "formally request[ing] that [she] withdraw as [his] attorney in 14CF1068" as Stryker intended to pursue an "insufficient evidence" claim, which apparently appointed counsel declined to present. (*Id.* at 39.) Stryker chose to proceed *pro se*, and on June 3, 2020, the Wisconsin Court of Appeals issued an order confirming Stryker's decision to represent himself. (*Id.* at 40.) The Court of Appeals also gave him permission to file a new motion for postconviction relief before proceeding with his direct appeal. (*Id.* at 40-41.)

On September 18, 2020, Stryker, proceeding *pro se*, filed a second motion for postconviction relief. In his new motion, he raised three claims, including an ineffective assistance of counsel claim premised on his trial counsel's failure to argue that Inventory.doc was privileged under Wis. Stat. § 905.04. (ECF No. 11-2 at 9.) In support of the motion, Stryker filed an affidavit from a social worker stating that Stryker had entered treatment in 2010 and continued with treatment for two years. (*Id.*) The social worker believed Inventory.doc was a document created by Stryker as part of his treatment. (*Id.* at 9-10.) Stryker also raised a claim of new evidence pertaining to the credibility of a detective and an insufficient evidence argument. (ECF No. 1-2 at 46.) On March 26, 2021, the circuit court issued an oral ruling denying Stryker's motion. (*Id.* at 41-76.) The circuit court reiterated that the defendant was granted permission by both the appellate court and the circuit court to proceed *pro se*, at his request, and noted that meant "he was put back into the position as if the postconviction proceedings [previously] held did not exist, and he was allowed to file a consolidated or superseding postconviction motion." (*Id.* at 45.)

Stryker then continued with a *pro se* direct appeal to the Wisconsin Court of Appeals. He raised three issues on appeal, claiming that he should be allowed to withdraw his guilty plea because: (1) his wife did not authority over the computer that was searched and the searches of the computer's files, held in evidence against him, violated his Fourth Amendment rights; (2) his trial counsel was constitutionally ineffective for failing to seek suppression of Inventory.doc on the grounds that it was privileged under the social worker-patient privilege codified in Wis. Stat. § 905.04 (2019-20); and (3) all references to contents of Inventory.doc should be stricken from the

court record and publicly available documents. (ECF No. 11-3.) On June 1, 2022, the Wisconsin Court of Appeals affirmed his conviction. (ECF No. 11-2.) On September 13, 2022, the Wisconsin Supreme Court denied review, (ECF No. 11-4 at 1), and on January 9, 2023, the United States Supreme Court denied petitioner's petition for writ of certiorari. (ECF No. 11-5 at 1.)

On February 2, 2023, Stryker filed a petition for writ of habeas corpus asserting three grounds for relief. (ECF No. 1.) After the Court screened Stryker's petition, Respondent filed a motion to dismiss. (ECF No. 10.)

## STANDARD OF REVIEW

"Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court cannot issue a writ of habeas corpus on a claim rejected in state court unless the petitioner surmounts high obstacles." *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019). Specifically, federal courts may not grant habeas relief on any claim that was "adjudicated on the merits in State court proceedings" unless such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This standard is highly deferential and a district court may not grant relief where "fairminded jurists could disagree on the correctness of the state court's decision." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

## ANALYSIS

Stryker's habeas petition identifies three grounds for relief. First, he claims he was denied the effective assistance of counsel during his direct appeal. Second, Stryker argues he should be allowed to withdraw his guilty plea because his wife did not have authority to consent to searches of the computer files held in evidence against him. Third, he contends he should be allowed to withdraw his guilty plea because trial counsel was ineffective in not seeking exclusion of the Inventory.doc as a privileged communication between petitioner and his social worker. (ECF No. 1 at 6-8.) Stryker acknowledges that he has not exhausted his first ground for relief but insists that exhaustion is not possible "because it was the deficient process itself which generated this ground." (*Id.* at 7.)

In seeking dismissal of the petition, Respondent argues that Stryker's first ground remains unexhausted and is thus not cognizable on habeas. Respondent insists that Stryker must either abandon Ground One or seek a stay and abeyance, and if he does not, this Court should dismiss his mixed petition. (ECF No. 11 at 7) (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982).) Respondent next argues that Stryker's second ground is procedurally barred by *Stone v. Powell*, 428 U.S. 465, 494 (1976) because Stryker had a full and fair hearing on the issue in state court. (*Id.* at 7.) Last, Respondent argues that Stryker's third ground for relief presents a question of state law that is not reviewable by this Court on habeas. (*Id.* at 10.) The Court agrees with Respondent on all three issues.

I. **Ground One Has Not Been Exhausted and Is Meritless.**

Stryker's alleges in Ground One that he was denied the effective assistance of counsel during his state direct appeal, resulting in a denial of due process. (ECF No. 1 at 6.) Stryker acknowledges that he presented Ground One as "unexhausted on the habeas form," and that "formal exhaustion via a *Knight* petition was not done." (ECF No. 12 at 6.) He claims, however, that he presented this issue to the Wisconsin court system sufficient to satisfy the concerns raised in *Carter v. Buesgen*, 10 F.4th 715 (7th Cir. 2021). (*Id.*) Stryker's effort to raise this issue on habeas suffers from at least two problems.

First, it is not clear that Stryker can even raise an ineffective of assistance of counsel claim related to his appeal given that he rejected the services of appointed counsel and chose to represent himself. The record confirms that Stryker complained about the delays in counsel's filing of his first postconviction motion, disagreed with his appointed counsel's legal conclusions and strategic decisions, and then insisted upon representing himself. (ECF No. 2-1 at 33.) As the SPD told him, Stryker was not entitled to replacement counsel. Legal proceedings take time and "[d]isagreements over case strategy are not grounds for appointment of new counsel." *United States v. Campos-Rivera*, 15 F.4th 826, 830 (7th Cir. 2021); *see also State v. McDowell*, 681 N.W.2d 500, 518 (Wis. 2004). Stryker was given the option, consistent with Wisconsin appellate procedure, of proceeding with the assistance of appointed counsel or *pro se*. (ECF No. 2-1 at 33); *State v. Redmond*, 552 N.W.2d 115 (Wis. Ct. App. 1996); *see also State v. Debra A.E.*, 523 N.W.2d 727, 737 (Wis. 1994) ("The defendant may terminate appellate counsel's representation and proceed pro se, or the defendant may allow postconviction relief to continue based on counsel's brief and then seek relief on the grounds of ineffective assistance of counsel."). He chose to

proceed pro se. (ECF No. 2-1 at 40.) He had the clear constitutional right to do so. *See* U.S. Const. amend. VI; Wis. Const. art. 1, § 7.

Stryker's decision to represent himself precludes him from raising ineffective assistance on direct appeal. As previously noted, Stryker sent a letter to his appointed counsel in May 2020 asking that she withdraw as his attorney so that he could present an insufficient evidence claim. (ECF No. 2-1 at 39.) Appointed counsel moved to withdraw and the Wisconsin Court of Appeals granted that motion after confirming Stryker's desire to proceed *pro se*. (*Id.* at 40.) A defendant who decides "to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *see also United States v. Egwaoje*, 335 F.3d 579, 587 (7th Cir. 2003) (stating that the Supreme Court has foreclosed a defendant who elects to represent himself from pursuing an ineffective assistance claim on appeal, citing *Faretta*, and also rejecting defendant's argument that by representing himself he was denied a fair trial).

Second, merits issues aside, Stryker's attempt to pursue this claim on habeas is barred by his failure to exhaust his state court remedies. Under Wisconsin procedure, claims of ineffective assistance of appellate counsel are generally presented by way of a *Knight* petition. *See State v. Knight*, 484 N.W.2d 540, 545 (Wis. 1992) ("[T]o bring a claim of ineffective assistance of appellate counsel, a defendant must petition the appellate court that heard the appeal for a writ of habeas corpus."); *State v. Evans*, 682 N.W.2d 784, 797 (Wis. 2004) ("[A] *Knight* petition is a substantive motion challenging the lawfulness of an individual's imprisonment based on the denial of effective assistance of counsel on direct appeal."), *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 714 N.W.2d 900, 909 (Wis. 2006). Stryker concedes he has never filed a Knight petition to raise this claim in the state courts. (ECF No. 12 at 6.) But he argues that he "is now 6-1/2 years removed from his conviction and sentencing [and] [i]t is unreasonable to expect him to wait longer for the state courts to formally decide a *Knight* petition." (*Id.* at 7.)

Stryker's attempt to evade his exhaustion obligations fails. The exhaustion requirement can be excused only if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). Neither circumstance is present here. Stryker has not even attempted to raise his claim that he was denied the effective assistance of appellate counsel in state court, and he concedes that Wisconsin law provides a procedure for him to do so. Stryker has not filed a

*Knight* petition and has not shown circumstances that would render that established process ineffective. His desire to skip the exhaustion process, having been previously unsuccessful on other issues in the state courts, is not a ground for excusing the exhaustion requirement. Where a petitioner "either failed to exhaust all available state remedies or raise all claims before the state courts, his petition must be denied without considering the merits." *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001).

Stryker also seeks to avoid exhaustion by invoking the Seventh Circuit's decision in *Carter v. Buesgen,* 10 F.4th 715 (7th Cir. 2021)*,* but that case has little resemblance to this one. In *Carter*, a Wisconsin inmate pleaded guilty to heroin and firearms charges and then sought to appeal his sentence on grounds that the prosecutor breached the plea agreement at sentencing and the trial court imposed the sentence based on inaccurate information, in violation of his Fourteenth Amendment Due Process Clause rights. *Id.* at 717. The state courts then grossly failed to move his appeal forward. After four years "and counting," Carter was still waiting to challenge his nine-year prison sentence on direct appeal. *Id.* at 716. During that four-year wait, his transcripts were delayed by ten months, three different public defenders were assigned to his case, and fourteen requests for extension were made by counsel and the trial court. *Id.* Carter then turned to the federal court for relief and filed a petition for writ of habeas corpus after being "[t]rapped by his counsel's recurring extension requests and what he saw as the complicity of the Wisconsin courts in the ongoing delay." *Id*. at 718. Carter acknowledged that he had not exhausted state court remedies. *Id.* While Carter's habeas petition was pending in federal court, the state court extended counsel's deadline another *five times*. *Id.* at 719. After the district court dismissed Carter's petition without prejudice for failure to exhaust, the Seventh Circuit reversed, concluding that Carter's state court remedies were ineffective to protect his rights and thus he was excused from the exhaustion requirement. *Id.* at 723-24. The Court of Appeals explained that Carter's experience showed a "systemic deficiency" in the Wisconsin court's handling of his case and that "not once ha[d] the Wisconsin Court of Appeals--or any other Wisconsin court for that matter-- recognized that Carter's case ha[d] been stalled for over four years." *Id.* at 719, 723.

Stryker's postconviction experience is far from the circumstances outlined in *Carter*. Unlike the petitioner in *Carter*, Stryker was able to litigate two post-conviction motions and a direct appeal through resolution in the state courts. He was not held in perpetual limbo, like the petitioner in *Carter*, with systemic deficiencies preventing his state court case from moving at all.

Although Stryker experienced delays in his state court proceedings, including the preparation of transcripts and numerous extensions, Stryker's motion for postconviction relief was heard on the merits. Rather than seeking perpetual delays, Stryker's appointed counsel sought a plea withdrawal and presented numerous grounds for relief including that the trial court erroneously exercised its discretion in denying Stryker's motion to suppress evidence and that Stryker was denied his right to effective assistance of counsel by his attorney's failure to cross-examine a detective about inconsistences, failure to present evidence found in the discovery, and failure to argue that the Inventory.doc was privileged. Shortly thereafter, on January 6, 2020, the circuit court denied the motion. Stryker's appointed counsel filed a notice of appeal on January 14, 2020, but that effort was then delayed by Stryker's filing of a *pro se* motion to dismiss the appeal and request to represent himself, apparently because he wanted to present an insufficient evidence claim. The Wisconsin Court of Appeals allowed Stryker to proceed *pro se* and permitted him to file a second postconviction motion, which he then did and lost. He continued to represent himself on direct appeal, and again lost.

Unlike the petitioner in *Carter*, who waited four years and had still not had a direct appeal, Stryker has filed two postconviction motions (one proceeding *pro se*) and a direct appeal in state court. All of those proceedings were resolved, albeit not in Stryker's favor. Unlike Carter's situation, in which the Wisconsin appellate process was "ineffective to protect rights secured by the United States Constitution," Stryker actually litigated his issues in the state court. Moreover, a significant part of the delays here fall at Stryker's feet. He insisted on representing himself and was granted permission to proceed *pro se*. At his request, the process started over, with the inevitable delay necessarily associated by his request. In the end, Stryker's claim remains unexhausted and this Court therefore may not consider it.

An unexhausted claim, however, does not necessary require dismissal. In limited circumstances, where dismissal would essentially bar a future habeas case because of the statute of limitations, a district court may instead stay the case and provide the petitioner the opportunity to exhaust the remaining claims. *Rhines v. Weber*, 544 U.S. 269, 275-78 (2005). The Seventh Circuit has cautioned, however, that a federal district court should only stay a mixed petition if the petitioner had good cause for his failure to exhaust and his claims "are not plainly meritless." *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008); *Rhines*, 544 U.S. at 277 (noting that "stay and abeyance should be available only in limited circumstances"). Stryker's case does not present

one of those limited circumstances warranting a stay. He has not demonstrated good cause for his failure to exhaust his first claim for relief and he has not shown that his claim is not plainly meritless. A defendant who elects to represent himself may not pursue on appeal a claim that he was denied the effective of assistance of counsel when he affirmatively waived that right. Ground One is therefore dismissed. Because Stryker's remaining two claims are procedurally barred and not cognizable on habeas, as explained below, the Court will grant Respondent's motion to dismiss the entirety of Stryker's habeas petition.

## II. Ground Two Is Procedurally Barred by *Stone v. Powell*.

In general, a federal court cannot grant habeas corpus relief based on a state court's failure to suppress evidence collected in violation of the Fourth Amendment. *Sutton v. Pfister*, 834 F.3d 816, 820 (7th Cir. 2016) (citing *Stone v. Powell*, 428 U.S. 465 (1976)). This is because the exclusionary rule is a "'means of effectuating the rights secured by the Fourth Amendment' by deterring police misconduct, rather than a personal constitutional right of the defendant." *Id*. (quoting *Powell*, 428 U.S. at 482, 486). In collateral proceedings, "that deterrent effect is so weak that it is outweighed by the harm of excluding probative evidence." *Id*. "As long as a habeas petitioner enjoyed an 'opportunity for full and fair litigation of a Fourth Amendment claim' in state court, federal habeas review of the claim is barred." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) (quoting *Powell*, 428 U.S. at 481-82). This requires only an ability to make arguments in state court: "As a general principle, absent a subversion of the hearing process, [the federal district court] will not examine whether the state courts made the right decision." *Id.*

Stryker argues that a search of his family's laptop computer violated his Fourth Amendment rights and spends the majority of his brief relitigating the circuit court's factual findings. For example, he argues that the authorization form signed by his wife did not state anything about a forensic download and while the detective testified he told Stryker's wife he was going to forensically download the computer, she did not specifically recall the detective using that terminology. (ECF No. 12 at 11.) Stryker also attempts to point out inconsistencies in the testimonies at the first hearing compared to the second hearing. (*Id.* at 11-12.) And, he argues that the decisions cited by the Wisconsin Court of Appeals have questionable relevance as none of the cases is directly applicable to petitioner's case. (*Id.* at 12-13.) Respondent contends that because Stryker received a full and fair hearing on the claim in state court, this claim is procedurally barred by *Stone v Powell*. (ECF No. 11 at 7–10.)

Respondent is correct, and accordingly, this Court's review can be "short." *Ben-Yisrayl*, 540 F.3d at 552. Even if this Court thought that any of Stryker's arguments had merit, because he received a full and fair hearing on this issue, this Court may not second guess the Wisconsin Court of Appeals' reasoning. *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) ("[Petitioner] simply asks us to disagree with the state courts' decision, a path that *Stone* closes."). As Respondent correctly points out, the fact that Stryker disagrees with the state court's ruling on the issue only confirms that the *Stone* procedural bar applies. (ECF No. 13 at 3.) Ground Two is procedurally barred.

**III.     Ground Three Raises an Issue of State Law and, Therefore, Is Not Cognizable in a Federal Habeas Proceeding.**

To obtain federal habeas relief under 28 U.S.C. § 2254(d)(1), the petitioner must show that the state's court's decision was "an unreasonable application of federal law—not a state court's resolution of a state law issue." *Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019). In *Kimbrough*, the state held that an Indiana prisoner was not prejudiced by counsel's failure to raise a state-law sentencing issue on appeal because, as a matter of state law, the argument would have been futile. *Id*. at 881-82. The Seventh Circuit held that the state court's finding of futility as a matter of state law was not subject to review of the federal courts. *Id*. at 882. Like the petitioner in *Kimbrough*, Stryker's third challenge presents an issue of state law—application of a state law privilege—an issue that is not subject to federal habeas review.

The Wisconsin Court of Appeals affirmed the circuit court's finding that Stryker failed to prove Inventory.doc was privileged under Wis. Stat. § 905.04(2). The Wisconsin Court of Appeals ruled:

> Neither Stryker, the social worker, nor anyone else testified as to the circumstances surrounding the creation of the document, its purpose, or what steps were taken to preserve its confidentiality. The affidavit from the social worker suggests that a document was created as part of Stryker's treatment, but that is not sufficient, by itself, to establish that the document met all of the requirements for protection under § 905.04(2). Because the document was not shown to be privileged [under Wis Stat. § 905.04(2)], Stryker's trial counsel was not ineffective in moving to suppress it on that ground.

(ECF No. 11-2 at 17-18.) The Wisconsin Court of Appeals also held that Stryker was not prejudiced by trial counsel's failure to move to suppress Inventory.doc on the grounds that it was privileged under Wis. Stat. § 905.04, because the argument would have been futile. (*Id.*) These questions of

state law privilege are not subject to review on habeas. The Seventh Circuit has confirmed that federal courts simply cannot "reexamine state-court determinations on state-law questions." *Kimbrough*, 941 F.3d at 882 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). This Court has no authority to overrule the Wisconsin Court of Appeals on a matter of state law. Accordingly, Stryker's third ground for relief also is not cognizable in a federal habeas proceeding. 28 U.S.C. § 2254(a). Stryker's petition must be dismissed.

## IV. The Court Will Not Issue a Certificate of Appealability.

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v Davis*, 580 U.S. 100, 115 (2017). Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Should Stryker desire to appeal this Court's ruling dismissing his petition for a writ of habeas corpus, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck*, 580 U.S. at 115 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Because no reasonable jurist could debate that the petition should have been resolved differently, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's Motion to Expand the Record (ECF No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent's motion to dismiss (ECF No. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DISMISSED WITH PREJUDICE,** and the Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

Dated at Milwaukee, Wisconsin on December 19, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge